```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
HOWARD EPSTEIN,                    :
                                        09 Civ. 5608 (WHP)
               Plaintiff,          :
                                        MEMORANDUM & ORDER
         -against-                 :

HARTFORD LIFE AND ACCIDENT         :
INSURANCE COMPANY,
                                   :
               Defendant.
----------------------------------X
```

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 8/25/2010

WILLIAM H. PAULEY III, District Judge:

Plaintiff Howard Epstein ("Epstein") brings this action against Hartford Life and Accident Insurance Company ("Hartford") pursuant to Section 1132 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., challenging Hartford's denial of Epstein's claim for long-term disability ("LTD") benefits. Hartford moves for summary judgment, primarily on the ground that Epstein's claim is time-barred under a contractual "Limitation of Actions" provision. For the following reasons, Hartford's motion is granted.

BACKGROUND

I. The Parties & Disability Benefit Plan

From 1984 to 2006, Epstein was employed by JPMorgan Chase & Co. ("JPMorgan") as a computer programmer with the title "Senior Technical Officer." (Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 dated Jan. 15, 2010 ("Def. 56.1 Stmt.") ¶¶ 1-2.) In January 2005, Epstein enrolled in the JPMorgan Chase

Long Term Disability Benefit Plan, Policy No. GLT-675174 (the "Plan" or "Policy") insured by Hartford. (Def. 56.1 Stmt. ¶ 4.)

The Plan provides short- and long-term disability benefits covering physical and mental illnesses and constitutes an "employee welfare benefit plan" under Section 3(1) of ERISA. (Declaration of Marsha L. Macko dated Jan. 13, 2010 ("Macko Decl.") at Bates No. 000036; Defs. 56.1 Stmt. ¶¶ 15, 58.) As claims administrator for the Plan, Hartford exercises "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions." (Def. 56.1 Stmt. ¶¶ 63-64.)

For the past twenty-five years, Epstein has suffered from progressively worsening stomach disorders including Crohn's disease. (Affidavit of Howard Epstein dated Aug. 1, 2008 ("Epstein Aff.") ¶¶ 8-9, 27, 37.) These conditions require frequent attention at work and home, as Epstein maintains an ileo-anal reservoir ("Jpouch") and colostomy bag. (Epstein Aff. ¶¶ 41-48, 52.) He is also diabetic and, over the past twenty years, has been hospitalized on several occasions and undergone multiple inpatient and outpatient surgeries. (Epstein Aff. ¶¶ 27, 31, 51, 66.) Further, he has experienced repeated bouts of dizziness and dehydration. (Epstein Aff. ¶¶ 24-25 31.) Epstein's extensive medical history can be summarized as follows:

<u>1983</u>: Diagnosed with ulcerative colitis;
<u>1991</u>: Underwent colonectomy procedure;
<u>1997</u>: Diagnosed with diabetes;
<u>2001</u>: Diagnosed with Crohn's disease, superseding 1983 diagnosis of ulcerative colitis;
<u>2001</u>: Underwent ileostomy procedure and received temporary colostomy bag;
<u>2004</u>: Underwent permanent ileostomy procedure, resulting in the need for a permanent colostomy bag;

      <u>April 2005</u>:    Suffered heart attack and underwent angioplasty procedures to open occluded arteries;
      <u>May 2005</u>:    Underwent second angioplasty procedure.

(Def. 56.1 Stmt. ¶¶ 6-13; Macko Decl. at Bates No. 000650-65; Epstein Aff. ¶¶ 8-9, 16, 24, 27, 37, 39, 43, 47, 49, 50, 52, 59-62.)

II. <u>Epstein's Short-Term Benefits Claim</u>

After a heart attack in April 2005, Epstein was unable to work and received short-term disability benefits approved by Hartford from April 15 to May 26, 2005. (Def. 56.1 Stmt. ¶ 14.) Epstein returned to work for two weeks in June 2005, but then filed a new short-term disability claim. (Def. 56.1 Stmt. ¶¶ 16-17.) On August 23, 2005, Maureen Santorelli ("Santorelli"), a nurse employed by Hartford, reviewed the information provided by Epstein's physicians: Dr. Simon Lichtiger ("Dr. Lichtiger"), a gastroenterologist, and Dr. Samin Sharma ("Dr. Sharma"), a cardiologist. (Def. 56.1 Stmt. ¶ 29; Macko Decl. at Bates Nos. 000457-58.) Santorelli recommended denying Epstein's claim because his condition was "currently stable" and "no medical documentation provided by either [Drs. Lichtiger or Sharma] supports [Epstein's] inability to perform the material and substantial job duties which are 100% sedentary using a computer and telephone." (Macko Decl. at Bates No. 000458.) Santorelli's recommendation was affirmed by a Hartford "Ability Analyst." On August 30, 2005, Epstein was notified that his claim was denied. (Def. 56.1 Stmt. ¶¶ 31-32.)

On September 8, 2005, Hartford approved another claim by Epstein under a different short-term policy available under New Jersey law (the "NJ Statutory Policy"). (Def.

-3-

56.1 Stmt. ¶¶ 33-34.) Under the NJ Statutory Policy, Epstein received three weeks of disability benefits. (Def. 56.1 Stmt. ¶ 34.)

On November 29, 2005, Epstein's attorney filed an appeal of Hartford's denial of short-term benefits. (Def. 56.1 Stmt. ¶¶ 35-38.) The appeal was reviewed by Marsha L. Macko ("Macko"), a Hartford Appeals Specialist. (Def. 56.1 Stmt. ¶ 40.) Macko sent Epstein's records for review by Dr. James Bress ("Dr. Bress") at University Disability Consortium ("UDC"), querying whether "Epstein [was] functionally capable of performing the duties of a primarily sedentary occupation on a full time basis as of 10/01/05[.]" (Def. 56.1 Stmt. ¶¶ 41-44, 46.) After conversations with Drs. Lichtiger and Sharma, Dr. Bress concluded "with a degree of medical certainty that [Epstein] was capable of a full time sedentary occupation during the period 5/23/05 to the present." (Def. 56.1 Stmt. ¶ 50.) After receiving Dr. Bress' findings, Macko referred Epstein's appeal to another claim reviewer to determine whether Epstein would qualify for benefits on account of his depression. (Def. 56.1 Stmt. ¶ 51-53.)

On January 23, 2006, Hartford advised Epstein's attorney that, although "the evidence does not support a functional loss or impairment from a physical standpoint," "the psychiatric component has not been fully addressed" and, "to be equitable to . . . Epstein, Appeals finds that [short-term disability] benefits are appropriate through . . . 10/26/05." (Macko Decl. at Bates No. 000477.) Hartford retroactively awarded Epstein short-term disability benefits and closed his claim. (Def. 56.1 Stmt. ¶¶ 53-57.)

III. Epstein's LTD Benefits Claim

On February 3, 2006, Epstein applied for LTD benefits from Hartford. (Def. 56.1 Stmt. ¶¶ 75-76.) The LTD policy had an Elimination Period of 182 days. (Def. 56.1 Stmt. ¶¶ 58, 71.) The Plan required Proof of Loss to be filed within 90 days of the Elimination Period's end:

> Written Proof of Loss must be sent to us within 90 days after the start of the period for which we owe payment. If proof is not given by the time it is due, it will not affect the claim if:
> 1. it was not possible to give proof within the required time; and
> 2. proof is given as soon as possible; but
> 3. not later than 1 year after it is due, unless You are not legally competent.

(Macko Decl. at 17; Def. 56.1 Stmt. ¶ 74.)

As a result of frequent hospitalizations and absences from work following his April 2005 heart attack, Epstein exhausted the 182-day Elimination Period on October 22, 2005. (Def. 56.1 Stmt. ¶ 73; Plaintiff's Response to Defendant's Rule 56.1 Statement dated Feb. 5, 2010 ("Pl. 56.1 Stmt.") ¶ 73.) Accordingly, Proof of Loss was due to Hartford by January 20, 2006. (Def. 56.1 Stmt. ¶ 74.) Epstein submitted Proof of Loss on February 3, 2006. (Def. 56.1 Stmt. ¶¶ 75-76.) Hartford accepted Epstein's submission and assigned Claims Specialist Cynthia Schmitt ("Schmitt") to review his claim. (Def. 56.1 Stmt. ¶¶ 77-81.)

Epstein identified Drs. Lichtiger and Sharma, as well as a psychiatrist, Dr. Steven Coleman ("Dr. Coleman"), and an internist, Dr. Richard Kelter ("Dr. Kelter"), as his treating physicians. (Def. 56.1 Stmt. ¶ 89.) JPMorgan submitted a job description for Epstein's position which stated that he was responsible for "day-to-day support of [JPMorgan's] mainframe

networking environment." (Macko Decl. at Bates No. 000448.) JPMorgan also detailed the physical requirements of Epstein's job:

> His job does not require physical work activities such as lifting heavy boxes, etc. His primary work location is at Newport, NJ and <u>occasionally</u> he may be asked to travel to Somerset or to other JPMC facilities for meetings. He is required to work at his desk at least 3 days per week (and work-at-home for the other two days if he prefers to do so) and he is required to carry his workstation with him to/from work and home and during business travel.

(Macko Decl. at Bates No. 000448 (emphasis in original).)

During March and April 2006, Schmitt reviewed Epstein's short-term disability application and conducted a telephone interview with Epstein and his counsel. (Def. 56.1 Stmt. ¶¶ 86-95.) Schmitt recorded Epstein's statements as:

> Clmt [Epstein] advised that he is unable to do much and he needs to stay out of the sun and drink a lot of fluid. Clmt advises that he needs to be near a restroom and because of this he declines invitations to do anything with the family or friends. Clmt advises that he stays home most of the time, watches TV, sometimes works on the computer and reads. Clmt advises that this is very intermittent depending on how he feels. Clmt advises that he naps often. Clmt advises that he gets up at night 2-3 times to empty his bad (sic) and drinks more fluids.

(Pl. 56.1 Stmt. ¶ 91.) Schmitt also recorded that she:

> Reviewed medical records from Dr. Sharma – cardiologist – First treatment date 4/05 and records from Dr. Lichtiger gastrointerologist. Clmt has been treating with Dr. Lichtiger for the past 10 years for Crohn'[s] disease, multiple episodes of dehydration requiring hospitalizations, diabetes, ASJD and depression for a number of years.

(Def. 56.1 Stmt. ¶ 96.) Schmitt concluded that "there is insufficient medical information to support clmt's disability resulting from his physical conditions." (Def. 56.1 Stmt. ¶ 97.) However, she noted that "there is sufficient medical information to support clmt current suffers

-6-

from depression and is currently under treatment for his depression with Dr. Coleman." (Def. 56.1 Stmt. ¶ 97.)

On May 3, 2006, Hartford denied Epstein's claim for LTD benefits based on physical disability, stating that "there is insufficient medical evidence currently contained in your claim file that would support functional impairment to such a degree that would prevent you from performing your full-time sedentary occupation from a physical standpoint." (Def. 56.1 Stmt. ¶ 103.) However, Hartford approved coverage under the mental/nervous LTD policy for a two-year period from October 22, 2005 to October 22, 2007. (Def. 56.1 Stmt. ¶¶ 98-104.)

IV. Epstein's Appeal

Epstein's attorney requested an extension of time to appeal Epstein's denial of LTD physical disability benefits. (Def. 56.1 Stmt. ¶ 106.) On May 10, 2006, Hartford granted Epstein an extension until April 22, 2008 to file an appeal and stated it would be requesting "additional medical updates with regard to Mr. Epstein's physical condition(s)." (Def. 56.1 Stmt. ¶¶ 107, 126.)

Between November 20, 2006 and October 22, 2007, Hartford made several requests for information regarding Epstein's physical condition. (Def. 56.1 Stmt. ¶¶ 108-13.) Epstein did not respond to any of them. (Def. 56.1 Stmt. ¶¶ 108-11; Pl. 56.1 Stmt. ¶¶ 108-11.) On October 23, 2007, the day after Epstein's mental/nervous LTD benefits expired, Hartford again notified Epstein that it would not provide LTD benefits for physical disability because Epstein failed to submit any evidence of disability. (Def. 56.1 Stmt. ¶ 117.) On October 25,

2007, Epstein's attorney informed Hartford that his client still intended to appeal the denial of his LTD physical disability benefits. (Macko Decl. at Bates No. 000365-368.)

On March 27 and April 8, 2008, Epstein's attorney requested additional time to file an appeal of the LTD benefits denial. (Def. 56.1 Stmt. ¶¶ 128-29.) Hartford extended the deadline to August 4, 2008. (Def. 56.1 Stmt. ¶ 129.)

On August 1, 2008, Epstein submitted an appeal of Hartford's LTD benefits denial. (Def. 56.1 Stmt. ¶ 130.) The appeal, consisting of approximately 1,000 pages of medical records, affidavits, and website printouts, was assigned to Macko—the Appeals Specialist who handled Epstein's short-term benefits appeal—for review. (Def. 56.1 Stmt. ¶¶ 131-36, 182, 185.) Macko referred Epstein's appeal for review by physicians at MES Solutions, Inc. ("MES"). (Def. 56.1 Stmt. ¶¶ 186-87.)

At MES, Dr. Douglas Brown ("Dr. Brown"), a board-certified neurologist, Dr. Mark Eaton ("Dr. Eaton"), a board-certified internist, and Dr. Rakesh Vinayek ("Dr. Vinayek"), a board-certified internist, reviewed Epstein's records and generated reports. (Def. 56.1 Stmt. ¶ 188.) All three MES doctors concluded that Epstein could perform either sedentary or light work up to eight hours a day. (Macko Decl. at Bates No. 000317, 000319, 000321-000322.)

On September 12, 2008, Macko received the findings from MES, determined that Epstein was not disabled within the meaning of the Plan, and upheld the May 3, 2006 LTD denial. (Def. 56.1 Stmt. ¶¶ 205-207.) By letter dated September 12, 2008, Macko advised Epstein's attorney of Hartford's decision. (Macko Decl. at Bates No. 000307-311.) The letter concluded: "All administrative remedies offered by the Appeals process have been exhausted.

This decision is final and binding." (Macko Decl. at Bates No. 000310-11.) The letter advised Epstein of his right to bring a civil action under ERISA. (Macko Decl. at Bates No. 000311.)

V. Procedural Posture

Epstein filed this action on June 18, 2009. Hartford now moves for summary judgment on the ground that Epstein's lawsuit is untimely under the Plan's "Limitation of Actions" clause. That clause provides:

> Legal action cannot be taken against [Hartford]:
> 1. sooner than 60 days after due Proof of Loss has been furnished; or
> 2. three years after the time written Proof of Loss is required to be furnished according to the terms of the Policy.

(Macko Decl. at Bates No. 00019 (emphasis added).)

DISCUSSION

I. Legal Standard

"Since there is no right to a jury trial under ERISA," Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003), summary judgment or "a bench trial on the papers with the District Court acting as the finder of fact" are the appropriate mechanisms for courts to consider a challenge to the denial of disability benefits. See Alfano v. CIGNA Life Ins. Co. of N.Y., No. 07 Civ. 9661 (GEL), 2009 WL 222351, at *12 (S.D.N.Y. Jan. 30, 2009) (citing Suarato v. Bldg. Servs. 32BJ Pension Fund, 554 F. Supp. 2d 399, 414-15 (S.D.N.Y. 2008). Because all parties to an ERISA lawsuit typically seek some action by the reviewing court—to validate or invalidate the denial of benefits—the usual practice is for the plaintiff and the

defendant to cross-move for summary judgment and for the court to resolve the case on the administrative record. See, e.g., Magee v. Metro. Life Ins. Co., 632 F. Supp. 2d 308, 311 (S.D.N.Y. 2009).

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Davis v. Blige, 505 F.3d 90, 97 (2d Cir. 2007). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine issue of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment but must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original); Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). The Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).

II. Limitation of Actions Clause

"In an action brought under ERISA, the contours guiding the court's disposition of the summary judgment motion are necessarily shaped through the application of the substantive law of ERISA." Ludwig v. NYNEX Serv. Co., 838 F. Supp. 769, 780 (S.D.N.Y.

1993). One substantive consideration a court should address early in the litigation is whether an action was commenced within the contractual "limitation of actions" period. See Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam). Because ERISA "does not prescribe a limitations period for 29 U.S.C. § 1132 actions . . . [the applicable limitations period is] that specified in the most nearly analogous state limitations statute." Burke, 572 F.3d at 78 (citing Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983)). New York law provides a six-year statute of limitations for actions arising from a contract but also "permits contracting parties to shorten a limitations period . . . if the agreement is memorialized in writing." Burke, 572 F.3d at 78 (citing N.Y. C.P.L.R. § 201); N.Y. C.P.L.R. § 213.

In Burke, the Court of Appeals "join[ed] the Fifth, Sixth, Seventh, and Eighth Circuits in upholding written plan terms including limitations periods which may begin to run before a claimant can bring legal action." 572 F.3d at 81 (emphasis added). As the Court of Appeals explained, allowing a limitations period to run prior to bringing suit is a matter of New York public policy and is required under the Insurance Law. See N.Y. Ins. Law § 3216(d)(1)(K) ("Each policy shall . . . contain the following provisions: . . . No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished."). Moreover, as Judge Posner has explained, the "dominant view" is to allow the limitations period to run before an action can be commenced under ERISA, "provided [the clauses] are reasonable. . . . This is true both in general and with specific reference to insurance

contracts. We think that the dominant view is right because it is consistent with the principle of party autonomy that underlies the law of contracts, and that it should be applicable to ERISA plans." Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 875 (7th Cir. 1997). Under Burke and cases like it, a court may excuse compliance with a limitation of actions provision only if the "contractually compressed period is unreasonably short" or the provision "creates a suspicion that the plaintiff was gulled or coerced by the defendant when the contract was made." Doe, 112 F.3d at 875; see also Burke, 572 F.3d at 81 ("[Plaintiff] had ample time within which to bring her claim.").

Hartford submits that because Epstein's Proof of Loss was due by January 20, 2006, this action should have been commenced by January 20, 2009. This Court agrees. Like the benefits plan reviewed in Burke—a Hartford policy—the Plan here unambiguously provides for a three-year Limitation of Actions period commencing from the day Proof of Loss must be furnished to Hartford. See White v. Cont'l Cas. Co., 878 N.E.2d 1019, 1021 (N.Y. 2007) ("As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning."). There is no dispute that the Elimination Period ended on October 22, 2005 or that Epstein was required to initiate claim for LTD benefits by January 20, 2006. Rather, he filed his LTD claim on February 3, 2006, and Hartford obliged him by accepting and processing the claim as though it were timely. However, even if Hartford's courtesy in accepting the late claim is construed against them, the Plan's Limitation of Actions provision still bars this suit.

The record reveals that Epstein delayed and demurred in meeting most of Hartford's deadlines and requests. Perhaps recognizing this, Epstein submits that the Limitation of Actions period started anew when Hartford requested new information on November 20, 2006

about Epstein's physical condition. Given that the denial of benefits occurred six months prior to this request, and this action is a review of that denial, it is not apparent why the November 20, 2006 request would reset the time to file this action. After all, Hartford's request occurred after the explicit benefits denial and after Epstein requested additional time to appeal, so it had no impact on Hartford's decision to deny LTD benefits. Moreover, Epstein's argument misconstrues the "Proof of Loss" term. The relevant "Proof of Loss" date for calculating the Limitation of Actions is the <u>initial</u> proof, required to be filed "90 days after the start of the period for which [Hartford] owe[s] payment." Epstein's argument takes this defined term from the Plan and alters its meaning to include any request for information made by Hartford. But this stretches the plain meaning too far. Nevertheless, given that neither Epstein nor his attorney elected to respond to Hartford's request, there is no reason Epstein should benefit from the fact that Hartford sent a request.

Epstein's reliance on <u>Skipper v. Claims Servs. Int'l</u>, 213 F. Supp. 2d 4, 6-7 (D. Mass. 2002), and similar cases from other districts, is unavailing. In <u>Skipper</u>, a court in the District of Massachusetts declined to enforce a contractual limitations period, explaining:

> The fatal defect in defendants' argument is that no reasonable person in plaintiff's circumstances could determine what was intended by the phrase 'two years from the time written proof of loss is required to be given.' To an ERISA beneficiary who has submitted his 'proof of loss,' has had his application for benefits approved, and has then been receiving benefits for a period of many years before being cut-off, this language is pure gobbledegook.

213 F. Supp. 2d at 6-7. Aside from its non-binding effect, <u>Skipper</u> did not concern an initial benefits denial but, rather, the discontinuation of benefits after more than seven years. <u>Skipper</u>, 213 F. Supp. 2d at 5. That situation is distinct from this one, where the claimant was denied

benefits at the outset and, therefore, had no reason to delay his appeal. If Hartford had approved LTD benefits just long enough to prevent Epstein from commencing an action within the limitations period, it would be plainly unjust to uphold Hartford's decision. See Abena v. Metro. Life Ins. Co., 544 F.3d 880, 884 (7th Cir. 2008) ("We can certainly imagine circumstances in which the application of this provision would not be reasonable. For example, if the employer paid the claim for three or more years and then terminated payments, it would be unreasonable to enforce a limitations period that ended before the claim could have even accrued."). But that situation is not present here—Hartford was clear at the outset that it was denying Epstein's LTD claim.

        Finally, any delay in Epstein's administrative appeals was attributable solely to Epstein's own actions. Accordingly, he should not benefit under an estoppel or equitable tolling theory. See Gassiott v. Prudential Ins. Co. of Am., No. 08 Civ. 7358 (JFK), 2009 WL 3188428, at *6-7 (S.D.N.Y. Oct. 6, 2009) ("Plaintiff's own conduct falls short of the 'reasonable diligence' required to justify equitable tolling. Plaintiff waited more than nine months after the initial denial of claim to file his first appeal, and then waited more than a year after denial of his first appeal to appeal a second time."). By waiting more than two years to appeal the denial of LTD benefits and refusing to communicate with Hartford in the interim, Epstein did not exercise the diligence required to equitably estop Hartford from enforcing the Plan's Limitation of Actions clause. As the Supreme Court has stated, "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984). The record also reveals that Hartford never represented to Epstein that it would toll the limitations period, nor did Hartford cajole Epstein to delay filing his claims,

appeals, or this action—all of which bordered on or were untimely. See Gassiott, 2009 WL 3188428, at *6 ("Plaintiff has not plead any facts to suggest that Prudential assured him the claim would be paid or otherwise tried to dissuade him from filing suit.") Rather, each time Epstein submitted a filing to Hartford for review, Hartford responded promptly with an approval or denial within a matter of months.

This is not a case where the enforcement of the contractual provision is contrary to the public policy of New York—indeed Hartford's policy provides exactly what New York law requires. "Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation." Ferguson v. Skrupa, 372 U.S. 726, 728-29 (1963). The "dominant view" on limitations clauses works only against the interests of the insured. Given the harsh results it can have in cases like this, the validity of such clauses is worthy of legislative debate. However, the law is settled, and this Court cannot enter into that debate.

Accordingly, because Epstein commenced this action five months after the requirement set by the contractual Limitation of Actions period, and because he has no equitable recourse, Hartford's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendant Hartford Life and Accident Insurance Company's motion for summary judgment is granted. The Clerk of Court is directed to enter a judgment accordingly, terminate all motions pending, and mark this case as closed.

Dated: August 25, 2010
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Scott M. Riemer, Esq.
60 East 42nd Street, 47th Floor
New York, NY 10165
*Counsel for Plaintiff*

Michael H. Bernstein, Esq.
Sedgwick, Detert, Moran & Arnold, LLP
125 Broad Street, 39th Floor
New York, NY 10004
*Counsel for Defendant*