UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
HOWARD EPSTEIN,                                                   Civ. Act. No.: 09 CIV 5608 (RA)

                Plaintiff,

       -against-                                          DOCUMENT
                                                                  ELECTRONICALLY FILED

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                Defendant.
--------------------------------------------------------------X


# DEFENDANT'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

                        SEDGWICK LLP
                        Attorneys for Defendant
                        Hartford Life and Accident Insurance Company
                        125 Broad Street, 39th Floor
                        New York, New York 10004-2400
                        Telephone: (212) 422-0202
                        Facsimile:  (212) 422-0925
                        [Sedgwick File No. 02489-000014]


*Of Counsel*
    Michael H. Bernstein
    John T. Seybert
    Daniel M. Meier

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT .......................................................................................................................................1

    POINT I

    HARTFORD'S DENIAL OF EPSTEIN'S CLAIM FOR LTD BENEFITS
    WAS BASED ON SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE
    RECORD ....................................................................................................................................1

        1.    Epstein's Condition Between October 22, 2005 through October 22,
             2007 Is Relevant. .....................................................................................................2

        2.    Epstein's Chronic Renal Disease Did Not Support A Claim Of
             Physical Disability As Of October 22, 2007. ..........................................................3

        3.    Epstein's Diabetes Mellitus Did Not Support A Claim Of Physical
             Disability As Of October 22, 2007. .........................................................................4

        4.    Epstein's Crohn's Disease Did Not Support A Claim Of A Physical
             Disability As Of October 22, 2007. .........................................................................5

        5.    Epstein's Coronary Condition Did Not Support A Claim Of Physical
             Disability As Of October 22, 2007. .........................................................................5

        6.    Epstein's Neurological Conditions Did Not Support A Claim Of
             Physical Disability As Of October 22, 2007. ..........................................................6

        7.    The Cumulative Effect of Epstein's Co-Morbidities Did Not Prevent
             Him From Performing His Sedentary Occupation As Of
             October 22, 2007. .....................................................................................................7

    POINT II:

    HARTFORD PROVIDED EPSTEIN WITH A FULL AND FAIR REVIEW .............................7

    POINT III:

    HARTFORD'S DETERMINATION WAS NOT INFLUENCED BY A
    CONFLICT OF INTEREST .....................................................................................................7

CONCLUSION ..................................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alto* v. *Hartford Life Ins. Co.*,
   No. 09 Civ. 07763(DAB), 2011 WL 1330863 (S.D.N.Y. Mar. 31, 2011),
   *aff'd* 11-1563-cv (2d Cir. June 13, 2012) .................................................................................. 10

*Bendik* v. *Hartford Life Ins. Co.*,
   No. 03 Civ. 8138 (LAP), 2010 WL 2730465 (S.D.N.Y. Jul. 12, 2010) ......................................... 8

*Durakovic* v. *Building Service 32 BJ Pension Fund*,
   609 F.3d 133 (2d Cir. 2010) .......................................................................................................... 8

*Graham* v. *First Reliance Standard Life Ins. Co.*,
   No. 04 Civ. 9797(NRB), 2007 WL 2192399 (S.D.N.Y. July 31, 2007) ....................................... 3

*Hobson* v. *Metropolitan Life Ins. Co.*,
   574 F.3d 75 (2d Cir. 2009) ............................................................................................................ 8

*McCauley* v. *First Unum Life Ins. Co.*,
   551 F.3d 126 (2d Cir. 2008) .......................................................................................................... 8

*Mugan* v. *Hartford Life Group Ins. Co.*,
   765 F. Supp. 359 (S.D.N.Y. 2011) ................................................................................................ 8

*Neerdaels* v. *Group Short Term Disability & Long Term Disability Plan For Employees Of Akami Techs., Inc.*,
   No. C 04-00721 JF, 2006 WL 515623 (N.D. Cal. Feb. 28, 2006)
   *aff'd* 261 Fed. Appx. 7 (9th Cir. 2007) ......................................................................................... 3

*Richard* v. *Fleet Financial Group Inc. LTD Employee Benefits Plan*,
   367 Fed. Appx. 230 (2d Cir. 2010) ............................................................................................. 10

**STATUTES**

Employee Retirement Income Security Act of 1974 ("ERISA") §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) ................................. 1

**PRELIMINARY STATEMENT**

Defendant Hartford Life and Accident Insurance Company ("Hartford") submits this Memorandum of Law in reply to Plaintiff Howard Epstein's ("Epstein") opposition and in further support of its motion for summary judgment dismissing Epstein's Complaint for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) on the ground that its decision to approve his claim for long-term disability ("LTD") benefits under the JPMorgan Chase Group Long Term Disability Benefit Plan (the "Plan") based on a mental nervous condition (which are limited to twenty-four months), but deny his claim for LTD benefits based on a physical condition, was based on substantial evidence in the administrative record and therefore not arbitrary and capricious. For the reasons discussed below, Epstein's challenges to Hartford's decision-making are all meritless and this Court should grant summary judgment dismissing Epstein's Complaint in its entirety.

**ARGUMENT**
**POINT I**
**HARTFORD'S DENIAL OF EPSTEIN'S CLAIM FOR LTD BENEFITS WAS BASED ON SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD**

Hartford's determination on May 3, 2006, finding that Epstein was not disabled as of October 22, 2005 by a physical condition, but was disabled by a mental/nervous condition, was based on substantial evidence in the administrative record. (Def's MOL[1], pp. 18-21; Def's Opp.,[2] pp. 4-11). On October 23, 2007, Hartford denied Epstein's claim for continuing LTD benefits as of October 22, 2007 based on a physical condition due to *his failure to submit any medical records* to support this claim. (378, 389-90).[3] Notably, Hartford denied further benefits only after Epstein ignored multiple letters and phone calls by Hartford asking him to submit updated medical records prior to the time his mental disability benefits exhausted on October 22, 2007. Epstein finally submitted over 1,000 pages of medical records in support of his appeal of Hartford's original determination that he did not meet the Plan definition of disability based on a

---

[1] Hartford's Memorandum of Law in support of his motion dated June 13, 2012, Doc. No. 43, is hereinafter referenced as "Def's MOL."
[2] Hartford's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment dated July 11, 2012, Doc. No. 55, is hereinafter referenced as "Def's Opp."
[3] The numbers in parentheses refer to the Bates Stamped pages starting with the prefix "EPSTEIN 000__," which are annexed to the Declaration of Marsha L. Macko dated January 13, 2010, Doc. No. 40 ("Macko Dec."), as Exhibits "A" through "B."

1

physical condition, but the majority of these documents related to treatment he had received while he was working; *i.e.*, prior to June 7, 2005. Almost none of it pertained to his status as of October 22, 2005, or between that date and October 22, 2007 when his mental disability benefits exhausted. Epstein argues that Hartford's determination was arbitrary and capricious because the medical records in the administrative record, which he refused to submit until his appeal, show that he was disabled by a combination of symptoms from several physical conditions. But Hartford denied Epstein's claim for LTD benefits based on a physical condition because there was no objective evidence in the record demonstrating that he was unable to perform the physical obligations of a sedentary job as of October 22, 2007. (307-11). In fact, the medical records in the administrative record demonstrate that he was not under the regular care of a doctor for his various diagnoses and complaints between October 22, 2005 through October 22, 2007 and there were little to no physical limitations or restrictions noted in the records of his treatment. For these reasons and as discussed more fully below, Epstein's challenges to Hartford's decision-making are meritless.

        1.        **Epstein's Condition Between October 22, 2005 through October 22, 2007 Is Relevant.**

Epstein argues that he did not need to establish that he was disabled from a physical condition between October 22, 2005 and October 22, 2007 and that he was only required to and did establish that he was "totally disabled as a result of a physical disability on and after October 22, 2007, not before." (Plt's Opp., p. 4).[4] But Epstein's argument makes no sense given his claimed physical conditions. Epstein does not claim to be physically disabled by an acute traumatic injury suffered on October 22, 2007. Rather, he claims he suffered from a variety of chronic disabling conditions since at least October 22, 2005. Thus, Epstein's lack of treatment for these conditions between October 22, 2005 and October 22, 2007 is relevant to his contention that he was physically disabled on October 22, 2007.

Epstein argues that the record shows that he sought treatment at least 19 times during the operative two-year period. (Plt's Opp., p. 5). This is a gross overstatement of the record, which documents that Epstein only submitted laboratory test results, MRIs, and office notes from his doctors who notably <u>did not</u> state that Epstein was disabled by a physical condition at that time.

---

[4] Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment dated July 11, 2012, Doc. No. 52, is hereinafter referenced as "Plt's Opp."

2

### 2. Epstein's Chronic Renal Disease Did Not Support A Claim Of Physical Disability As Of October 22, 2007.

Epstein argues in his opposition that he was physically disabled by chronic renal disease as of October 22, 2007. Yet Epstein did not identify any of his treating physician's notes or medical record outlining any restrictions or limitations on his ability to work due to chronic renal disease. Epstein's arguments concerning his renal condition are largely based on the fact that he had a single visit with Dr. Jonathan Winston in December 2006.[5] Notably, Dr. Winston did not document in his notes that Epstein had any medical complications that would prevent him from fulfilling the duties of a sedentary occupation due to chronic renal disease. (711-12). (*See also* Def's Opp., p. 6).

Strangely, Epstein argues that the Court should focus on the time period after his coverage terminated and he was no longer eligible for coverage to determine whether he was disabled during the time he was still covered. (Plt's Opp., p. 7). Epstein's references to hospital stays for renal failure and dehydration on February 6, 2008 and March 17, 2008 do not demonstrate his inability to perform the obligations of a sedentary position on October 22, 2007 due to his renal condition.[6] These records of hospitalization four months after Epstein's coverage under the Plan terminated are not relevant to his condition on October 22, 2007 because treatment performed after benefits were terminated are not evidence of a previously existing disability. *See Graham* v. *First Reliance Standard Life Ins. Co.*, No. 04 Civ. 9797(NRB), 2007 WL 2192399, at *4 (S.D.N.Y. July 31, 2007) (finding that plaintiff's medical records from a later time period do not adequately demonstrate the severity of a disability from earlier periods of time); *see also Neerdaels* v. *Group Short Term Disability & Long Term Disability Plan For Employees Of Akami Techs., Inc.*, No. C 04-00721 JF, 2006 WL 515623, *6 (N.D. Cal. Feb. 28, 2006) *aff'd* 261 Fed. Appx. 7 (9th Cir. 2007) (upholding the insurer's denial under *de novo* review despite physician's report stating that disability began earlier because the contemporaneous evidence did not support plaintiff's

---

[5] Notably, Epstein relies on a December 2006 physician's office visit note to support his claimed renal disability on October 22, 2007 although he inconsistently argues that the only issue in this case is whether he was disabled "on or after October 22, 2007, not before." (Plt's Opp., p. 4). According to Epstein's own arguments, this note is irrelevant.

[6] Epstein also references a hospital stay on April 14-15, 2006, which was a year and a half *before* his benefits terminated. (1293-94). Notably, Epstein did not advise Hartford of this stay in or around April 2006 or claim to be disabled by these conditions. (248-49). Also, in December 2006, Dr. Winston did not note any restrictions from these conditions. (711-12).

3

disability at the time he stopped working).

While Epstein cites cases suggesting that a treating doctor's diagnosis reached after the relevant coverage period may be relevant to explain symptoms noted during earlier periods of time (Plt's Opp., p. 7), these cases are inapposite. Epstein's references to his hospitalization do not identify any record of physical restrictions and limitation due to his renal condition that existed as of October 22, 2007. Indeed, nothing in these records supports Epstein's argument that he was actually disabled by chronic renal disease as of October 22, 2007. Notably, Epstein does not even identify any treatment in or around October 22, 2007 related to chronic renal disease that supports the conclusion that on this date, he was unable to work in a sedentary job due to this condition.

Furthermore, Dr. Rakesh Vinayek, a physician board certified in internal medicine, with a sub-specialty certificate in gastroenterology, who provided an independent medical record peer review report of Epstein's medical records, considered all of Epstein's records and did not find any evidence of restrictions and limitations preventing Epstein from performing sedentary work as of October 22, 2007. Rather, Dr. Vinayek only found that subsequent hospital records support Epstein's inability to work at the time of these hospital stays, which again was months after October 22, 2007. (320-21). These hospital records and Epstein's condition at the time of these admissions are irrelevant to Hartford's determination because Epstein was not eligible for benefits after October 22, 2007.[7] (309-10).

### 3. Epstein's Diabetes Mellitus Did Not Support A Claim Of Physical Disability As Of October 22, 2007.

Epstein argues that Hartford purportedly failed to consider this diabetes mellitus diagnosis. (Plt's Opp., pp. 11-12). But none of Epstein's physicians stated that his condition prevented him from performing the duties of a sedentary occupation. (711-12; 983) (*See also* Def's Opp., pp. 6-7). Similarly, Epstein's argument based on the insertion of an insulin pump also fails to demonstrate any physical disability due to diabetes as there were no complications with the pump noted anywhere in the record and Dr. Elliot Rayfield (who treated Epstein for diabetes) did not state that he was disabled by this condition. (Plt's Opp., p. 8) (983, 985, 995). Moreover, Epstein was diagnosed with diabetes in 1997 and received

---

[7] Similarly, Epstein's reference to the insertion of a PIIC line for fluids in February 2008 four months after his benefits were terminated is also irrelevant to his condition on October 22, 2007. (Plt's Opp., p. 2). (321, 663).

4

NY/1006917v1

treatment for this condition both before and after he stopped working in April 2005. (Def's Opp., pp. 6-7).

### 4. Epstein's Crohn's Disease Did Not Support A Claim Of Physical Disability As Of October 22, 2007.

Epstein also argues that he was disabled by Crohn's Disease (Plt's Opp., pp. 8-9), but he does not point to any medical records or physician's notes stating that he was rendered unable to work due to this condition. Instead, Epstein identifies a handful of exacerbations between 2001 and 2006, several of which occurred during the time Epstein was working. (*See* Def's Opp., pp. 7-8). Moreover, Dr. Simon Lichtiger, Epstein's treating gastroenterologist, did not explain how this condition prevented Epstein from performing a sedentary occupation or provide any objective measurements of his claimed fatigue and weakness due to Crohn's disease in order to support the argument that he was rendered disabled by this condition. Epstein has not even identified any treatment notes from any of his physicians documenting an exacerbation of this condition between October 22, 2005 and October 22, 2007. Instead, Epstein cherry picks from Dr. Lichtiger's records to cite: a September 8, 2005 report which did not state that the condition was disabling; a form completed and created by his attorney's office and signed by Dr. Lichtiger (the "Medical And Functional Capacity Assessment"); a March 5, 2006 letter that indicated that Epstein's inability to work stemmed, in large part, from his depression; and a report dated over nine months after Hartford's initial determination, which was never submitted to Hartford, and should not be considered by the Court (the July 28, 2008 Lichtiger report). (*See* Def's Opp., pp. 24-26). But none of these materials identify any physical restrictions and limitations as a result Crohn's disease that prevented Epstein from performing sedentary work as of October 22, 2007.

### 5. Epstein's Coronary Condition Did Not Support A Claim Of Physical Disability As Of October 22, 2007.

Epstein baselessly argues that his coronary condition prevented him from returning to a sedentary occupation (Plt's Opp., pp. 5-6), but none of the material he cites from the record actually supports this contention. (*see* Def's Opp., pp. 5-6). Epstein also argues that Hartford's review of his claim of disability due to his coronary condition was flawed because Hartford purportedly emphasized medical evidence that favored denial of benefits and de-emphasized evidence that supported Epstein's claim of disability. (Plt's Opp., p. 5). This specious argument is entirely unsupported by the

5

record.  In fact, as explained in Hartford's moving and opposition briefs, Hartford and the independent medical record physician peer review consultants considered each and every diagnosis Epstein claimed to be disabling and determined that he was not rendered unable to perform the duties of a sedentary occupation by any of them, either together or separately.  (Def's MOL, pp. 18-21; Def's Opp., pp. 9-12).  In particular, Epstein did not submit any records demonstrating that he was disabled by hypertension or heart disease as of October 22, 2007.  The record demonstrates that Epstein's treating cardiologist, Dr. Samin Sharma, only treated Epstein through April 2005, and Epstein saw Dr. Hecht (another cardiologist) on June 26, 2006, March 30, and June 18, 2007 and then not again until June 2008.  Additionally, while Epstein points to his June 19, 2008 stress test (i.e. after October 22, 2007)[8] as evidence of his physical limitations eight months earlier, the results do not support his argument.  Epstein's earlier stress tests actually showed that he had "normal exercise tolerance" and "normal [blood pressure] through study." (725, 827-29).  Furthermore, the June 2008 report noted that there was "no significant interval change" between the prior stress tests.  (842).  Epstein was also noted to be taking medications to treat his heart condition with no demonstrated disabling side-effects. (314-15).

### 6. Epstein's Neurological Conditions Did Not Support A Claim Of Physical Disability As Of October 22, 2007.

Epstein also claims that his neurological conditions prevented him from performing a sedentary occupation but again, the records do not support his claim. (Plt's Opp., pp. 9-10; Def's Opp, p. 8).  Epstein's peripheral neuropathy was not regularly treated between October 22, 2005 and October 22, 2007, and Dr. Rayfield's conclusions concerning his complaints of decreased sensation in his feet would have no bearing on Epstein's functional ability to work at a computer.  Additionally, Dr. Alexander Schick's (Epstein's other treating neurologist) evaluations did not note any disabling conditions due to Meniere's Disease, and Epstein's December 2007 through March 2008 records from the Rusk Institute of Rehab Medicine also did not imply disability in October 2007.  Moreover, Dr. Brown noted that there were no exacerbations since December 2006 and, in any event, restricted Epstein's ability to walk frequently, stoop, crawl and kneel based on his Meniere's Disease. (316).  These physical demands are not required by Epstein's sedentary

---

[8] Again, Epstein relies on irrelevant records of his treatment months after October 22, 2007 to argue he was disabled on that date.

occupation. (448). While Epstein pointed to Dr. Daniel Arick's (Epstein's other neurologist treating Epstein for hearing loss) evaluations of Epstein's continuing complaints of hearing loss, there was no representation that these complaints constituted a disabling condition. Additionally, Epstein's spondylosis condition was diagnosed a year prior to the day he stopped working and thus, is not reflective of any disabling condition. (317).

> 7. **The Cumulative Effect of Epstein's Co-Morbidities Did Not Prevent Him From Performing His Sedentary Occupation As Of October 22, 2007.**

Epstein argues that Hartford failed to conduct a co-morbid analysis of his various conditions in making its final determination concerning his claim for LTD benefits. (Plt's Opp., pp. 12-13). This is belied by the administrative record, which shows that Hartford fully considered all of Epstein's allegedly disabling conditions individually and in concert with all of his other conditions. (Def's Opp., pp. 9-12). In this regard, it is worth noting again that Hartford referred Epstein's claim for review by three independent medical peer review consultants, who are board certified in gastroenterology, neurology and cardiology. In fact, Epstein's records were referred for these three (3) peer reviews because, as Hartford Appeal Specialist Marsha Macko explained, "[d]ue to complexity of case, referral for tri-morbid peer review would be appropriate." (156). The record also reflects that all three of the peer review physician consultants spoke with one another, relayed their findings, incorporated the others' opinions into their own reports, and each separately opined that Epstein was physically able to perform the duties of a sedentary occupation. (313-22). Furthermore, Ms. Macko considered the cumulative effect of Epstein's co-morbid conditions. (310). Accordingly, Epstein's argument that Hartford failed to do so is demonstrably inaccurate.

## POINT II
## HARTFORD PROVIDED EPSTEIN WITH A FULL AND FAIR REVIEW

In his opposition, Epstein repeats the same arguments on this issue that were set forth in his initial motion papers. (Plt's Opp., pp. 13-14). Hartford respectfully refers the Court to Def's Opp. at pages 16-17 and incorporates those arguments by reference herein.

## POINT III
## HARTFORD'S DETERMINATION WAS NOT INFLUENCED BY A CONFLICT OF INTEREST

7

Epstein asserts that Hartford operated under an "inherent conflict of interest" due to its dual role as claims administrator and insurer. (Plt's Opp., p. 15). As explained in Def's Opp., Hartford submitted unrebutted proof in admissible form along with its principal motion papers detailing the active steps it takes to promote accuracy and "wall off" financial departments from its claim and appeals decision-making departments. (Def's MOL, pp. 23-25, Declaration of Bruce Luddy, dated January 11, 2010, Doc. No. 39 ("Luddy Dec."), Declaration of Marsha L. Macko dated January 13, 2010 (Doc. No. 40) ("Macko Dec."), ¶¶5-9, Def's Opp., pp. 17-18). This evidence is *prima facie* proof of Hartford's active steps to ameliorate the effect of any structural conflict of interest, as the Second Circuit stated should be submitted on this issue in *McCauley* v. *First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir. 2008). The Second Circuit has also held that a reviewing court should decline to afford "conflict of interest *any weight* in [its review of a claim administrator's] benefit denial" if there is no evidence to suggest that the alleged conflict actually influenced the claim determination. *Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009) (emphasis added); *Durakovic* v. *Building Service 32 BJ Pension Fund*, 609 F.3d 133 (2d Cir. 2010). Although Epstein has submitted reams of irrelevant documents, which he claims relate to the conflict issue, these submissions are completely meritless and therefore, Epstein's specious conflict arguments must be rejected.

In fact, Epstein's conflict arguments are premised on improper and unsupportable assumptions. For example, Epstein argues that because there is a "dotted-line" report between Hartford's executives on an organizational flow chart, there is no separation between its claims/appeals department and its financial department. (Plt's Opp., p. 19). Not only is this argument speculative to the point of absurdity, it was specifically rejected by this Court in *Mugan* v. *Hartford Life Group Ins. Co.*, 765 F. Supp. 359, 373 (S.D.N.Y. 2011); *see also Bendik* v. *Hartford Life Ins. Co.*, No. 03 Civ. 8138 (LAP), 2010 WL 2730465 (S.D.N.Y. Jul. 12, 2010) (finding that "Hartford took steps to ensure accuracy in its claims assessment."), *aff'd*, 2011 WL 4091073 (2d Cir. Sept. 15, 2011) (Summary Order).

Epstein feverishly argues that Hartford's "corporate culture" has created a "viral loop" in which claims personnel blindly seek to "beat the average" time to resolve claims and appeal, resulting in a situation where the average time for claim resolution is too quick for all submissions to be fairly considered. (Plt's Opp., pp. 19-21). This scurrilous

8

argument is without any basis in reality and does nothing more than underscore the lack of merit to any of Epstein's arguments because there would be no need to foist such nonsense upon the Court if he had better points to make. Manifestly, Hartford considered all of Epstein's submissions and even obtained three (3) independent peer review opinions before rendering a final appeal decision on Epstein's claim, which shows that his baseless "viral loop" arguments are without merit.

Epstein next argues that Hartford failed to consult with an independent medical peer review doctor to assess his chronic renal disease and diabetes mellitus. (Plt's Opp., p. 20). This argument is baseless because, as previously discussed, Hartford obtained peer review opinions from three qualified physicians. (313-22) (Hartford's Opp., pp. 11-16). These physicians considered all of Epstein's diagnoses and conditions and there is no requirement that additional peer review consultants with additional specialties be retained in cases such as this one. (Def's Opp., pp. 11-16).

Epstein asserts that Hartford's purported "viral loop" culture caused it to assess his conditions individually and not cumulatively. Again, the record belies this argument. (313-22). Indeed, Ms. Macko specifically discussed the cumulative effect of Epstein's conditions in her determination letter. (Def's Opp., p. 10). (Def. Opp., p. 22).

It bears repeating that numerous courts in this Circuit, and others, have found that the very steps Hartford took in this case to promote accuracy in its decision-making and to reduce the influence of any financial conflict of interest result in the conflict of interest factor being reduced to the "vanishing point." (*See* Def's MOL, p. 25 (listing cases); Def's Opp., pp. 17-18). Epstein's argument that these findings from other courts, based on exactly the same information as that presented here, should be ignored because Hartford did not ask this Court to take judicial notice is a *non sequitur*. (Plt's Opp., p. 21). Hartford is not asking this Court to take judicial notice of the facts in the cited cases. Rather, Hartford cited these cases to show that numerous courts have accepted the same proof Hartford provided in this case as sufficient evidence that it takes active steps to reduce the influence of a conflict of interest on its decision-making.

Furthermore, and perhaps most significantly, the unique facts of this case render Epstein's conflict arguments particularly inappropriate. The record reflects that the sole reason Epstein received two years of LTD benefits after October 22, 2005 is because Hartford determined that he was disabled by depression, based on information given by

9

Epstein's treating physician. Notably, Epstein did not identify depression as a basis for his disability; nonetheless, Hartford considered this condition on its own initiative, resulting in benefits being paid. This is the antithesis of financially conflicted behavior. *See Alto* v. *Hartford Life Ins. Co.*, No. 09 Civ. 07763(DAB), 2011 WL 1330863, *5 (S.D.N.Y. Mar. 31, 2011), *aff'd* 11-1563-cv (2d Cir. June 13, 2012) (Summary Order). Epstein's argument that Hartford made this determination without even consulting with a psychiatrist is irrelevant because, as even he acknowledges, he benefitted from this determination by receiving LTD benefits for two years. Moreover, Epstein's allegations of Hartford's purported financial bias are inconsistent with Hartford's generous extensions of time permitting him to file his initial benefit claim late[9] and also allowing him more than 2.5 years to file his first appeal letter. While Epstein tries to minimize these extensions, they were significant given that this Court previously noted "Epstein delayed and demurred in meeting most of Hartford's deadlines and requests." 2010 WL 3359480, at *7 *vacated on other grounds* 449 Fed. Appx. 46 (2011). Hartford's willingness to forgive Epstein's delays and consider the substance of his claim, rather than strictly enforcing deadlines and denying his claim based on procedural non-compliance is also inconsistent with financially conflicted behavior.

Finally, this Court need not even consider the conflict of interest factor if it determines that substantial evidence in the administrative record exists to support Hartford's determination. *See Richard* v. *Fleet Financial Group Inc. LTD Employee Benefits Plan*, 367 Fed. Appx. 230, 233 (2d Cir. 2010).

## **CONCLUSION**

For the foregoing reasons and those set forth in Hartford's initial Memorandum of Law in support of this motion, as well as the reasons set forth in Hartford's opposition to Epstein's motion for summary judgment, this Court should grant Hartford's motion for summary judgment, dismissing Epstein's Complaint.

---

[9] Epstein failed to timely file his original proof of loss in support of his claim for LTD benefits. (17, 172, 429-32). Although Hartford was within its rights under the Plan to deny the claim based on this reason alone, Hartford considered the claim on the merits. (Def's MOL, p. 6).

10

NY/1006917v1

Dated:    New York, New York
            August 24, 2012

                                        Respectfully Submitted,

                                        ____s/_____
                                        Michael H. Bernstein (MB 0579)
                                        John T. Seybert (JS 5014)
                                        Daniel M. Meier (DM 2833)
                                        SEDGWICK LLP
                                        Attorneys for Defendant
                                        *Hartford Life and Accident Insurance Company*

## CERTIFICATE OF SERVICE

I, JOHN T. SEYBERT, hereby certify and affirm that a true and correct copy of the attached **DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served via ECF and regular mail on this 24th day of August, 2012, upon the following:

> Scott M. Riemer Esq.
> Riemer & Associates
> 60 East 42nd Street, Suite 1750
> New York NY 10165
> Business E-mail: sriemer@riemerlawfirm.com

s/
JOHN T. SEYBERT

Dated:   New York, New York
         August 24, 2012

NY/1006917v1