Scott M. Riemer (SR 5005)
RIEMER & ASSOCIATES LLC
60 East 42nd Street, Suite 1750
New York, New York 10165
(212) 297-0700
sriemer@riemerlawfirm.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HOWARD EPSTEIN,

       Plaintiff,     09 CV 5608 (RA)

   -against-       ECF Case

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

       Defendant.
------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Of Counsel:
 Scott M. Riemer
 Sharon H. Lee

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.   HARTFORD'S DISCONTINUATION OF BENEFITS WAS AN ABUSE
        OF DISCRETION ........................................................................................................... 2

        A.  Hartford Abused its Discretion because its Benefits Determination
            was Not Reasonable ............................................................................................... 2

            1.  Hartford Failed to Consult with Doctors with Appropriate
                Expertise to Assess All of Epstein's Conditions ................................... 3

            2.  Hartford Improperly Assessed Epstein's Physical Illnesses
                Individually and not in Combination ..................................................... 5

            3.  Hartford and its Medical Consultants Overlooked or De-
                Emphasized Important Evidence ............................................................ 5

            4.  Hartford Improperly Relied on its Doctors' Conclusory
                Opinions .................................................................................................. 8

            5.  Hartford Improperly Applied the Definition of Total
                Disability Under the Policy .................................................................... 8

        B.  Hartford Failed to Provide Epstein a Full and Fair Review ................................ 9

    II.  HARTFORD'S CONFLICT OF INTEREST WAS OF GREAT
        IMPORTANCE ................................................................................................................ 9

    III. HARTFORD'S MOTION TO STRIKE SHOULD BE DENIED ............................. 11

CONCLUSION ........................................................................................................................... 14

## TABLE OF AUTHORITIES

*Abatie v. ALTA Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (*en banc*) .............................. 9

*Durakovic v. Building Services 32 BJ Pension Fund*, 609 F.3d 133 (2d. Cir. 2010) .............................. 9

*Hickman v. Taylor*, 329 U.S. 495 (1947) ...................................................................................... 13

*McCauley v. First UNUM Life Ins. Co.,* 551 F.3d 126 (2d Cir. 2008) .................................. 6, 9-10, 12

*Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008) ...................................................... 9-10

*Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995) ................................................... 11-12

*Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011) ........................................ 9

## FEDERAL STATUTES

Fed. R. Civ. P. 26 ................................................................................................................... 2, 11

29 C.F.R. §2560.503-1(h)(2)(iv) ................................................................................................... 6

29 C.F.R. §2560.503-1(h)(3)(ii) .................................................................................................... 9

29 C.F.R. §2560.503-1(h)(3)(iii) ................................................................................................... 3

PRELIMINARY STATEMENT

Epstein suffers from heart disease, hypertension, chronic renal disease, diabetes mellitus, Crohn's disease, peripheral neuropathy, Meniere's disease, cervical spondylosis and medication side effects. Among Epstein's many symptoms are dehydration requiring IV fluid four hours a day through a PIIC line in his arm; electrolyte imbalance; high volume diarrhea; frequent low blood sugar episodes despite the insertion of an insulin pump; neck, arm, and chest pain; pain and numbness in the hand; greatly decreased feet sensation to pinprick; limited exercise intolerance; balance and equilibrium problems; episodes of dizziness; vertigo; lightheadedness; fatigue; weakness; anemia; decreased hearing and bilateral tinnitus; must empty his ileostomy bag approximately 20 times per day; and feeling hung over from the side effects of his 15 daily medications. (321, 663, 525, 527-30, 641-42, 984, 691-95, 718, 751; Exs. 20 and 21).

Hartford hired three doctors to assess Epstein's condition. But, these doctors did not assess all of his conditions (no one assessed Epstein's chronic renal disease and diabetes mellitus) and they failed to assess the impact of all of his illnesses in combination. They, furthermore, failed to consider all of Epstein's evidence, including the crucial 7/28/08 report of Dr. Lichtiger, which was block quoted substantially in full in Epstein's 8/1/08 appeal letter. (640-642).

Hartford tries its best to prevent a substantive review of the evidence. First, Hartford spends much of its brief making vituperative *ad hominem* attacks on Epstein's counsel, and raising arguments that, to the extent they were ever relevant, were negated by the Second Circuit's decision finding Epstein's claim to be timely. Second, Hartford seeks to quash the strong evidence submitted by Epstein demonstrating Hartford's conflict of interest. But, Hartford should have examined its own actions before throwing stones. The main evidence Hartford proffers to rebut the issue of conflict, the Bruce Luddy Affidavit, is evidence outside the administrative record, from an individual who had no direct involvement with Epstein's claim, and who was not disclosed by Hartford under

1

Rule 26. Hartford's protests of prejudice ring hollow when Hartford made no disclosures itself and Epstein's proffered documents are all known to Hartford. All of the proffered documents are all internal Hartford documents produced by Hartford to the undersigned in other recent cases.

## ARGUMENT

I. HARTFORD'S DISCONTINUATION OF BENEFITS WAS AN ABUSE OF DISCRETION

   A. Hartford Abused its Discretion because its Benefits Determination was Not Reasonable

Epstein is a very sick man, who suffers from a complicated combination of physical illnesses. Despite the overwhelming evidence supporting his physical illnesses (See Epstein Opp. at 5-11), Hartford unreasonably terminated Epstein's benefits under the Policy's 24-month mental illness limitation.

Hartford attempts to deflect the Court's attention from the merits of the case by littering its brief with *ad hominem* attacks on counsel for Epstein. Among the attacks, are claims that Epstein's counsel was "uncooperative" and "hoarded" many of Epstein's records and did not submit them to Hartford until Epstein's administrative appeal was filed on August 1, 2008.[1] (Hartford Opp. at 2, 4, 12-14, 21). Not only were the efficacy of these arguments negated when the Second Circuit found Epstein's claim to be timely asserted, but they misrepresent the factual record. When Epstein's counsel received Hartford's May 3, 2006 letter imposing the 24-month mental illness limitation, he promptly wrote Hartford seeking an extension of the right to appeal until the end of the 24-month period. (404). Epstein's counsel wrote, "[w]e . . . believe that an appeal is premature and would be a waste of resources for both Mr. Epstein and Hartford. Much could change by October 2007. It may be that Mr. Epstein's physical condition greatly worsens and Hartford no longer contests his

---

[1] In support, Hartford cites to this Court's decision dated August 25, 2010, which was vacated by the Second Circuit. (Hartford Opp. at 13 n.5).

2

physical disability." (404). Hartford agreed, writing Epstein's counsel on May 10, 2006, that "[p]lease be advised that Mr. Epstein will have 180 days from October 22, 2007 to appeal our decision regarding his physical condition." (403). Subsequently, Epstein's counsel did in fact start gathering Epstein's extensive records, but did not send them in until the appeal because: (a) Epstein's physical condition was not relevant until October 22, 2007; and (b) the appeal was not due until 180 days after that date. Moreover, because Epstein suffered from so many illnesses, which needed to be viewed in combination, sending the records to Hartford on a piecemeal basis only would give Hartford an incomplete picture of Epstein's condition.

In this reply brief, Epstein will endeavor not to repeat the extensive briefing already submitted. Rather, it will respond to the specific assertions made in Hartford's opposition papers.

> 1. Hartford Failed to Consult with Doctors with Appropriate Expertise to Assess All of Epstein's Conditions

Hartford failed to satisfy the standard for a full and fair review set forth in 29 C.F.R. §2560.503-1(h)(3)(iii). (See, Epstein at 11-12; Epstein Opp. at 10-11).

Chronic Renal Disease

Hartford argues that neither Hartford nor its medical consultants had the burden of explaining: (1) why Epstein required acute care in February 2008, but had no restrictions in October 2007; and (2) why Epstein had no restrictions despite the March 17, 2008 insertion of a PIIC line to prevent dehydration. (Hartford Opp. at 11-12). In taking this defensive approach, Hartford asserts that "the only relevant inquiry was whether Epstein was physically capable of working as of October 22, 2007." (*Id.* at 12). But, an insurer cannot simply refuse to credit evidence that is generated after an applicable date (particularly in light of Epstein's established history of renal disease). (Epstein Opp. at 7). Moreover, Epstein's advanced diabetes and end-stage renal disease did not happen overnight in Feb/March 2008. Indeed, Epstein: (a) suffered from acute renal failure as early as April

3

2006, when he hospitalized for acute renal failure on April 14 and 15, 2006 (1293-1294); and (b) suffered from not only acute renal failure, but chronic renal insufficiency. Dr. Lichtiger states in his 7/28/08 report, "His kidneys are compromised by recurrent acute renal failure superimposed on chronic renal insufficiency for which he needs periodic admission to the hospital." (641). Dr. Lichtiger further indicates that Epstein has been disabled for a few years, "Howard has, over the past few years, required frequent hospitalizations because of one or more of his illnesses. His multiple ailments affect every organ and system of the body, limiting his day-to-day functioning substantially and rendering him incapable of performing his own or any occupation." (642).

Diabetes Mellitus

After denying the fact for three years of litigation, Hartford finally concedes that Epstein required the insertion of an insulin pump due to his diabetes. (Hartford Opp. at 7). This is important because the insertion of the insulin pump demonstrates the severity of Epstein's diabetes, and neither Hartford nor its medical consultants considered this fact during the claims determination process.

Despite this concession, Hartford asserts that "none of Epstein's own doctors found him to be disabled due to diabetes." (Id. at 12). This is incorrect. Dr. Lichtiger repeatedly opined that diabetes was one of the many physical illnesses that contributed to Epstein's disability: 9/8/05 Report (525); 11/14/05 Medical and Functional Capacity Assessment (530); 3/5/06 Report (691); and 7/28/08 Report (Ex. 21)(641).

Hartford further asserts that Epstein failed to establish that Hartford's medical consultants were incapable of evaluating his functional ability, regardless of his diagnosis. (Hartford Opp. at 11). Though Hartford characterizes its medical consultants as "internists" (and, therefore, presumably jacks-of-all-trades), none were practicing internists. For example, Dr. Vinayek is certified in Internal

4

Medicine because such certification is a steppingstone[2] for being certified in Gastroenterology. Therefore, to assert that Dr. Vinayek is qualified to opine as to conditions outside his specialty of gastroenterology, *i.e.*, into the specialized fields of nephrology and endocrinology, is meritless. Moreover, Dr. Vinayek himself never claimed to be qualified to evaluate diabetes and renal disease, and never in fact evaluated these conditions in his evaluation report. (320-322).

2. Hartford Improperly Assessed Epstein's Physical Illnesses
   <u>Individually and not in Combination</u>

Hartford argues that it "explicitly" considered the cumulative effect of Epstein's physical illnesses. (Hartford Opp. at 9-11). But, instead of pointing the Court to specific instances where its medical experts or appeals staff considered the combination of Epstein's many illnesses, Hartford relies exclusively on a conclusory statement in its 9/12/08 appeal denial letter claiming that it considered Epstein's illnesses "alone or in combination." (Hartford Opp. at 10) (310). It relies on this conclusory statement because the record shows the opposite; that Hartford considered Epstein's illnesses in isolation and did not consider them in combination. (Epstein at 11-12; Epstein Opp. at 12-13).

In an attempt to turn the tables, Hartford accuses Epstein of omitting the symptoms of depression from his mathematical formula. (Hartford Opp. at 10). But, depression was not included in the formula because: (a) Epstein is totally disabled under the Plan irrespective of his depression; and (b) depression is no longer relevant because of the two-year mental illness limitation. Indeed, Dr. Lichtiger re-confirmed in his 7/28/08 Report: "[Epstein] is totally disabled from any occupation as a result of his physical ailments alone, independent of his symptoms of depression and anxiety." (642).

3. Hartford and its Medical Consultants Overlooked or De-Emphasized
   <u>Important Evidence</u>

---

[2] See, http://www.abim.org/certification/policies/imss/gastro.aspx.

5

Hartford and its medical consultants overlooked or de-emphasized important medical evidence supporting Epstein's physical disability.  (See, Hartford at 10-13; Hartford Opp. at 4-9).

<u>7/28/08 Dr. Lichtiger Report</u>

Hartford asserts that it could not review Dr. Lichtiger's 7/28/08 report because Epstein "never provided [the 7/28/08 Report] to Hartford[.]"  (Hartford Opp. at 13-14).

<u>First</u>, even if, *arguendo*, Dr. Lichtiger's 7/28/08 report were inadvertently omitted from Epstein's appeal (and Epstein asserts that it was not),[3] Hartford nonetheless violated its duty under 29 C.F.R. 2560.503-1(h)(2)(iv) to "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim…."  This is because substantially all of the content of the 7/28/08 report was block quoted in Epstein's 8/1/08 appeal letter and was indisputably made a part of the record submitted to Hartford.  (640-642).  Despite this, there is no evidence in any of the reports of Hartford's medical consultants or in Hartford's appeal denial letter that the content of 7/28/08 report was ever considered.  Nor did Hartford ever inform Epstein that the quoted language in the appeal letter was somehow deficient because it was not directly signed by Dr. Lichtiger.  *See, McCauley v. First UNUM Life Ins. Co.*, 551 F.3d 126, 135 (2d Cir. 2008) (UNUM's rejection of the disabling symptoms described in an unsigned memorandum was unreasonable because UNUM never informed the plaintiff that the absence of a physician's signature was a reason for rejecting his information).

---

[3] Hartford simply dismissed the content of the Affidavit of Audrey Beerman dated June 13, 2012, where she provided her sworn statement concerning the procedures she undertook to submit Epstein's 8/1/08 appeal letter and supporting medical evidence, including the 7/28/08 Report at issue. (Id.).  But, there is reason to question the thoroughness of Hartford's scanning of the 8/1/08 submission.  A review of Epstein's claim file reveals that the 8/1/08 submission was scanned into Hartford's system in a haphazard manner (*i.e.*, Bates numbers on the documents are out of sequence).  (650-1672).

6

Second, Hartford asserts that Epstein "could have challenged the completeness of the administrative record disclosed in this action by Hartford on September 10, 2009 if he believed [the 7/28/08 report] was missing. . ." (Hartford Opp. at 14). But, Hartford cites no authority that: (a) Hartford has the right to designate the scope of the record (as opposed to it being decided by the Court); or that (b) Epstein had any obligation to challenge (or mechanism to do so) the completeness of Hartford's designated record at any time prior to this motion.

Records of the Rusk Institute of Rehab Medicine

The records from the Rusk Institute are important because the testing administered on December 18, 2007 objectively established that Epstein was impaired due to Meniere's disease. (Epstein at 14; Epstein Opp. at 9-10). Hartford, however, asserts that this medical evidence "did not require any special consideration" because it concerned a time period after October 22, 2007, the date by which Epstein had to establish disability. (Hartford Opp. at 14-15).

But, the symptoms requiring treatment at Rusk did not suddenly develop after October 22, 2007. Rather, Epstein: (a) was referred to Rusk by Dr. Schick (995), who evaluated him on March 2, 2007 (1007-08); and (b) presented at Rusk, indicating "PT reports in the past year and a half increased frequency and extended duration of episodes…." (995).

2008 Cardiac Test Results

Epstein's 2008 cardiac test results demonstrated that his cardiac condition worsened from testing completed in 2007. (Epstein at 14-15; Epstein Opp. at 5-6). Like the records from the Rusk Institute, Hartford improperly determined that the medical evidence "did not require any special consideration," as discussed *supra*.

7/24/07 Treatment Note of Dr. Rayfield

Dr. Rayfield's 7/24/07 treatment note is significant because it directly contradicts Dr. Brown's opinion with respect to Epstein's peripheral neuropathy. (Epstein at 14). The treatment

7

note documented a physical examination, which revealed "greatly decreased sensation to pinprick over his feet." (Epstein at 14)(984). Hartford attempts to diffuse its failure to identify this examination by asserting that it would have no bearing on Epstein's ability to work a sedentary job. (Hartford Opp. at 15). But, this is the lay opinion of counsel for Hartford. Neither Hartford nor its medical consultants considered this information during the claims determination process.

 3/29/07 Treatment Note of Dr. Arick

Dr. Arick's 3/29/07 treatment note is significant because it is further proof that Epstein's dizziness was getting worse, not better. The treatment note in pertinent part provides: "Hearing getting worse, dizziness too. Lightheadedness mostly." (Epstein at 14)(751). Hartford fails to address this treatment note.

4. Hartford Improperly Relied on its Doctors' Conclusory Opinions

In opposition, Hartford completely fails to address this argument. (Epstein at 15-16).

5. Hartford Improperly Applied the Definition of Total Disability
 Under the Policy

Hartford asserts that it was unnecessary to perform a review under the "any occupation" standard because Epstein was capable of performing his own occupation as a computer programmer. (Hartford Opp. at 16). Hartford's sole support for this conclusion is Epstein's alleged admission that "he was still capable of computer use." *Id.* But, this assertion misrepresents Hartford's own April 25, 2006 claim note, which states: "Clmt advises that he stays home most of the time, watches TV, sometimes works on the computer and reads. Clmt advises that this is very intermittent depending on how he feels." (171).

This is hardly an admission that Epstein could continuously work on a computer as he had to do as a full-time computer programmer. Indeed, the opposite is true. As Epstein's treating doctor, Dr. Lichtiger, explained, "[Epstein] has bilateral ulnar neuropathy which causes pain and

8

numbness in the nerve distribution and decreased functions of the hand, which can affect his ability to operate a computer." (641-42).

### B. Hartford Failed to Provide Epstein a Full and Fair Review

Hartford argues that there is "nothing" in the Department of Labor regulations that prevented Appeal Specialist Macko from performing a double review of Epstein's claim file. (Hartford Opp. at 17). This argument fails because the Regulation explicitly mandates that an insurer must have a different individual decide a claimant's appeal than individuals who participated in the initial claim. 29 C.F.R. §2560.503-1(h)(3)(ii). It was inappropriate to have Macko decide Epstein's LTD appeal, when she decided the appeal he filed in the STD portion of his claim.[4] The determination in that earlier appeal (that Epstein did not suffer from a disabling physical illness) informed Hartford's LTD determination.

### II. HARTFORD'S CONFLICT OF INTEREST WAS OF GREAT IMPORTANCE

Hartford's termination of Epstein's benefits was arbitrary and capricious, irrespective of Hartford's conflict of interest. With that said, as described in Epstein's moving brief (Epstein at 19-25) and opposition brief (Epstein Opp. at 15-21), Hartford's conflict of interest was important and the Court should apply appropriate skepticism to Hartford's determination if the Court deems the other factors to be close.

Hartford asserts that applying "skepticism," as described in *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011) and *Abatie v. ALTA Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir. 2006) (*en banc*), is an inapplicable Ninth Circuit standard. (Hartford Opp. at 18). But, *Salomaa* and *Abatie* are consistent with *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008), *McCauley* and *Durakovic v. Building Services 32 BJ Pension Fund*, 609 F.3d 133 (2d. Cir. 2010), and more

---

[4] Hartford misstates that Epstein argues that Macko was involved in both Hartford's initial LTD determination and appeal. (Hartford Opp. at 16-17).

fully instruct lower courts on how to weigh a conflict of interest after it is found. (Epstein at 19; Epstein Opp. at 15-17).

In his moving and opposition briefs, Epstein demonstrated that Hartford maintains a claims adjudication culture that inappropriately focuses on cost savings (leading to claim denial or early termination), which should not be part of a neutral claim process. (Epstein at 20-24; Epstein Opp. at 20). In doing so, Epstein demonstrates how each class of employee involved in the claims determination process was affected by Hartford's culture. (Epstein at 20-21).

In opposition, Hartford asserts that none of the employees used by Epstein as examples had any involvement in the decision-making in Epstein's claim for benefits. (Hartford Opp. at 19)(emphasis in original). Hartford, however, misses the point. The record clearly indicates that an LTD Examiner, LTD Specialist, and Ability Analyst were <u>directly</u> involved in the administration of Epstein's claim. The fact that these employees <u>as a class</u> are all inappropriately instructed by Hartford (through their periodic employee evaluations) to focus on cost savings demonstrates that Epstein's claim was not decided in a neutral environment but rather in an environment that was impacted by Hartford's conflict of interest. *See Glenn*, 128. S.Ct. at 2351 (appropriate for courts to consider an insurer's "history of biased claims administration"); *see also McCauley*, 551 F.3d at 137 (considering the biased claims administration of First UNUM Life Ins. Co.).

Epstein further demonstrated that Hartford's inappropriate corporate culture of cost savings directly impacted the administration of his claim, which is evidenced by the inexplicable procedural irregularities that were made when Hartford assessed Epstein's physical illnesses. (Epstein at 24-25; Epstein Opp. at 20-21). In opposition, Hartford asks the Court to dismiss this argument based on *Young v. Hartford Life and Accident Ins. Co.*, 09-cv-9811 (RJH). (Hartford Opp. at 22). But, *Young* was decided on a completely different set of facts.

Hartford also argues that: (1) it took "active steps to reduce potential bias and to promote accuracy;" and (2) its "willingness to investigate and approve benefits on a ground never raised by Epstein is the antithesis of conflicted behavior." (Hartford at 22-24; Hartford Opp. at 17-18). Epstein respectfully refers the Court to his opposition brief, where these arguments were fully addressed. (Epstein Opp. at 15-21).

### III.    HARTFORD'S MOTION TO STRIKE SHOULD BE DENIED

Hartford argues that Exhibits "10" through "21" to the Affirmation of Scott M. Riemer ("Riemer Affirmation") and the Affidavit of Audrey Beerman ("Beerman Affidavit") should be stricken from the record because: (1) Exhibits "20" and "21" are not part of the record; (2) Exhibits "10" through "21" and the Beerman Affidavit were not disclosed; and (3) Exhibits "10" through "19" are irrelevant. (Hartford Opp. at 23-29). Hartford's motion to strike should be denied.

First, Hartford lives in a glass house. In support of its January 2010 and June 2012 motions for summary judgment, Hartford submitted the Declaration of Bruce Luddy dated January 15, 2010 ("Luddy Declaration")(Docs. 14, 39), which is evidence <u>outside</u> the record. Moreover, the Luddy Declaration is authored by Bruce Luddy, the head of Hartford's appeal unit, who had <u>no</u> direct involvement in Epstein's claim and who was <u>not</u> disclosed to Epstein in Hartford's Rule 26(a) disclosure (Hartford Ex. E). Hartford does not explain how the Court can consider the undisclosed Luddy Affidavit, but not the evidence submitted by Epstein.

It is Epstein's position that the Court consider all evidence that is pertinent to Hartford's conflict of interest.

Second, contrary to Hartford's assertion that the Court cannot consider evidence outside the record (Hartford Opp. at 23-24), the Supreme Court and the Second Circuit permits review of evidence outside the record pertaining to an insurer's conflict of interest. (See, Epstein Opp. at 15). Moreover, Hartford relies on *Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995). (Hartford at

11

3).  But, Hartford overlooks that the Second Circuit in *Miller* itself considered evidence outside the record pertaining to the procedures applied in the case.  For instance, the Court considered the deposition of the Fund administrator:

> In reviewing the denial of Potok's claim, the subcommittee did not actually examine the nursing notes; rather, it relied on the summary provided by Byrne. <u>As Byrne's deposition indicates</u>, however, he found no evidence in the notes to justify the Fund's ultimate denial of the claim

72 F.3d at 1072 (emphasis added).  *See also, McCauley*, 551 F.3d at 136, 137 (Second Circuit reviewed evidence pertaining to First UNUM's past practices in other cases and the deposition of the treating physician).

<u>Third</u>, Hartford's protest of surprise, prejudice, and irrelevancy is feigned.  (Hartford Opp. at 24-29).  Exhibits "10" through "19" pertain specifically to Hartford's companywide claims practices and the evaluation of the same classes of employees who were involved with Epstein's case.  This evidence directly rebuts the assertions made in the Luddy Declaration.  Most importantly, these Exhibits were <u>all</u> provided by Hartford to the undersigned in other cases (*i.e.*, *Ahmad v. Hartford Life and Accident Ins. Co.*, 10-cv-4545(PAC)(MHD); and *Jacoby v. Hartford Life and Accident Ins. Co.*, 07-cv-4627 (LAK)(RLE)).  Significantly, the evidence in *Ahmad* was produced subject to a protective order, where Hartford agreed that:

> Scott M. Riemer and Riemer & Associates, LLC (together "Plaintiff's Counsel") may use the Confidential Information produced under this Agreement in any subsequent litigation which Plaintiff's Counsel represents a party asserting a claim for benefits where Hartford Life and Accident Insurance Company . . . issued a policy of insurance or administered the claim pursuant to an administrative services agreement.

Protective Order, entered 12/30/10 in *Ahmad*.[5]  It could come as no surprise that the undersigned would then use Hartford's <u>own</u> documents, produced by Hartford to the undersigned in the *Ahmad* case, to rebut the allegations in the Luddy Affidavit.

The fact that Exhibits "10" through "19" were produced in *Ahmad* or *Jacoby* versus this case is immaterial.  Exhibits "10" through "19" are directly relevant to Hartford's companywide practices, and every much as relevant as the Luddy Declaration already proffered by Hartford.

Hartford also should not have been taken by surprise by Epstein's submission of Exhibits "20" and "21."  Exhibit "20" is the SSA's reversal of its initial denial.  In his 2/5/10 brief in opposition to summary judgment, Epstein explained:

> In its moving papers, Hartford attempts to offset the weight of Epstein's evidence (and its own lack of evidence) by highlighting the fact that Social Security denied Epstein's disability income claim. (Def. Br., p. 9, 23; 56.1 Stat., ¶¶120-125).  But, Hartford never referenced or relied on the Social Security denial when it denied Epstein's appeal. (179-183).
>
> Because Hartford opened up the door with its *post hoc* use of Epstein's Social Security denial, in order to set the record straight, Epstein requests that the Court consider Social Security's November 6, 2008 "Fully Favorable" decision which was not available during the claims process with Hartford.

(Doc. 20, p. 2).  Indeed, Hartford itself references the SSA determination in its June 2012 moving brief. (Hartford at 9).

Accordingly, Hartford's motion to strike should be denied.  Citing *Hickman v. Taylor*, 329 U.S. 495 (1947), Hartford asserts that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." (Hartford Opp. at 24).  Hartford had mutual knowledge of <u>all</u> of the disputed exhibits.  With the exception of Exhibits "20" and "21," such exhibits were all Hartford documents that Hartford itself produced to the undersigned.  Hartford was in no way

---

[5] In the *Ahmad* case, Hartford was represented by Michael Bernstein, Esq. of Sedgwick LLP, the same lawyer and law firm representing Hartford in the present case.  Mr. Bernstein and the undersigned have been opposing counsel on several ERISA disability cases asserted against Hartford, where a similar Protective Order was entered.  Mr. Bernstein is well aware that the undersigned is in possession of Hartford discovery from each of those cases.

prejudiced. If Hartford believed that the exhibits were misleading or did not accurately reflect Hartford's internal practices, it had the opportunity to submit documents/affidavits in rebuttal. It did not.

## CONCLUSION

For all of the foregoing reasons, the Court should: (1) grant summary judgment in favor of Epstein; and (2) deny Hartford's motion to strike.

Dated: New York, New York
       August 24, 2012

                                                    Respectfully submitted,

                                                   /s/ Scott M. Riemer
                                                 Scott M. Riemer (SR5005)
                                                 Riemer & Associates LLC
                                                 60 East 42nd Street, Suite 1750
                                                 New York, New York 10165
                                                 (212) 297-0700
                                                 sriemer@riemerlawfirm.com

**CERTIFICATE OF SERVICE**

     **I HEREBY CERTIFY** that on August 24, 2012, I served a true and complete copy of the foregoing Plaintiff's Reply Memorandum of Law in Further Support of Summary Judgment by transmitting the same by electronic mail to the following individuals at the e-mail addresses indicated:

Michael H. Bernstein, Esq.
Sedgwick LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Tel.: (212) 422-0202
Fax: (212) 422-0925
michael.bernstein@sedgwicklaw.com
*Attorneys for Defendants*

I also certify that this document filed through the ECF system will be sent electronically to all registered participants on August 24, 2012.

Dated:  New York, New York
         August 24, 2012

                                       /s/Scott M. Riemer_____
                                         Scott M. Riemer (SR5005)